IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–02862–KMT

JESSIE CARL DEMOLIN,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

Plaintiff Jessie Carl Demolin ["Demolin"] brings this action, pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Andrew M. Saul, Commissioner of the Social Security Administration ["Commissioner"], denying his applications for child disability insurance benefits. (Doc. No. 1.) Plaintiff filed an Opening Brief, the Commissioner responded, and Plaintiff replied. (["Opening Brief"], Doc. No. 11; ["Response"], Doc. No. 14; ["Reply"], Doc. No. 15.) The Commissioner has also filed the Administrative Record. (Social Security Administrative Record ["AR"], Doc. No. 9.) After carefully analyzing the briefs and the administrative record, the court AFFIRMS the Commissioner's final decision.

## BACKGROUND[1]

Demolin was born on August 19, 1997; he alleges disability beginning on his date of birth. (AR 53.) He has a high school education and no past relevant work experience. (AR 30, 140-41.) On September 16, 2016, Plaintiff applied for child disability benefits, under Title II of the Act, based on the earnings record of his insured parent.[2] (AR 15, 52-53, 124-25.) In his application, Demolin claimed to be disabled, since birth, due to "scoliosis – 2013 surgery," "respiratory – 1 lung functions," "auto immune system dysfunction," "kidney problems," and "BMI 17.63." (AR 54.) The Commissioner denied Plaintiff's application on June 15, 2017. (AR 15, 52-62.) Demolin then successfully requested a hearing before an administrative law judge ["ALJ"]. (AR 15, 74-119.) That hearing took place, on September 10, 2018, before ALJ Terrance Hugar. (AR 15, 26-45.) Plaintiff, who was then twenty-one years old, appeared and testified at the hearing, accompanied by his attorney, Michael Krieger. (*Id.*) The ALJ also heard testimony from a vocational expert. (*Id.*) Medical opinions were provided by a non-examining state agency physician, Michael Canham, M.D., and an examining physician, Samuel Rubinson, M.D. (AR 58-60, 383-402.)

At the hearing, the ALJ heard testimony from Plaintiff regarding his impairments. Demolin testified that he suffers from chronic headaches, which cause dizziness, nausea, and light sensitivity, and which last for approximately thirty minutes to an hour each morning. (AR

---

[1] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

[2] To be eligible for adult disabled child benefits based on the earnings record for an insured parent, the claimant must be over the age of eighteen, unmarried, and found disabled before his twenty-second birthday. 20 C.F.R. § 404.350(a).

30-32.)  Plaintiff further testified that he suffers from constant back pain, which is exacerbated by sitting, and which is concentrated "pretty much everywhere" throughout his middle and lower back.  (AR 32.)  Demolin reported that, since birth, he has undergone approximately ten or twelve surgical procedures to address his back pain, most recently in 2013.  (AR 34.)  Plaintiff told the ALJ that he also has muscle weakness in his right arm, as well as related pain and soreness in his right shoulder, which became worse after the 2013 surgery, and which makes it difficult for him to reach overhead.  (AR 33-34.)  Demolin also reported difficulty breathing and shortness of breath, caused by a lung impairment.  (AR 36.)  Plaintiff testified that he requires a cane to ambulate "two or three days throughout the week," though he did not use a cane at the hearing.  (AR 38-39.)

Demolin further testified to the severity and debilitating effects of the impairments from which he suffers.  Plaintiff reported that, due to his lung and back impairments, he can stand or walk, continuously, for no more than five to ten minutes before he must rest.  (AR 35-37.)  He likewise reported that he is able to sit, continuously, for no more than twenty to forty-five minutes at a time.  (AR 35.)  Demolin testified that he also has difficulty kneeling, and that he is "not really capable" of bending.  (AR 37.)  Plaintiff further testified that, due to muscle pain, he has difficulty sleeping throughout the night, which causes him to feel tired and fatigued throughout the next day.  (AR 32.)  Demolin testified that he must nap, for two to three hours each day, four to five times each week.  (*Id.*)  He further testified that he must lay down for an additional two to three hours every day.  (AR 37.)  Plaintiff reported that, due to his inability to concentrate for sustained periods, he cannot drive a car.  (AR 30.)  He also reported that his medications cause "drowsiness" and "grogginess," as well as "blurriness" in his eyes.  (*Id.*)

At the hearing, Demolin told the ALJ that he experiences an equal number of "good days" and "bad days" with respect to the severity of his pain.  (AR 34-35.)  Demolin reported that, on a "good day," which occurs two to three times each week, his pain level, on a scale of one to ten, is "three to five."  (*Id.*)  Plaintiff conversely rated his pain level on a "bad day" to be "five to six" out of ten.  (*Id.*)  Demolin testified that, on a typical "good day," he usually reads, cleans his room, or plays computer games.  (AR 37-38.)  He reported that, on a typical "bad day," he "lay[s] down," "turn[s] the lights off," "put[s] headphones in," and takes his medications.  (AR 35.)  Demolin testified that a family friend usually takes him grocery shopping, and "does the carrying" of his groceries, though Plaintiff admitted that he is able to walk around the store without much assistance.  (AR 38.)  Plaintiff likewise admitted that, despite his impairments, he is able to lift a gallon of milk with either arm, open a water bottle, and use a manual can opener.  (AR 33.)  Demolin told the ALJ that he exercises by "stretching and walking," only.  (AR 40.)  Plaintiff reported that he also used to play soccer, "before [his] previous surgery," during his freshman year of high school.  (*Id.*)  However, Plaintiff told the ALJ that he had not played soccer, at all, since that time.  (*Id.*)

On November 23, 2018, the ALJ issued a written decision in accordance with the Commissioner's five-step,[3] sequential evaluation process.[4]  (AR 15-22.)  The ALJ determined, at

---

[3] The ALJ did not cite to, or rely upon, the three-step sequential evaluation employed in child disability benefits cases.  *See* 20 C.F.R. § 416.924(b)-(d).  Rather, the ALJ addressed the evidence in the context of the five-step evaluation framework used in disability insurance benefits and supplemental security income cases.  (*See* AR 15-22.)  Because neither party claims error on that basis, there is no need to address the issue further.

[4] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his

step one, that Plaintiff had not engaged in substantial gainful employment since August 19, 1997, the alleged onset date.  (AR 17 ¶ 2.)  At step two of his analysis, the ALJ found that Demolin had two severe impairments: scoliosis and asthma.  (AR 17 ¶ 3.)  Neither of Demolin's impairments, alone or in combination, were found to be presumptively disabling at step three.  (AR 17 ¶ 4.)

Prior to reaching step four, the ALJ assessed Plaintiff's residual functional capacity ["RFC"], and found him capable of sedentary work, subject to the following limitations:

> [H]e can only occasionally balance, kneel, stoop, crouch, and climb ramps and stairs, and he can never crawl or climb ladders, ropes, or scaffolds.  Additionally, the claimant cannot be exposed to workplace hazards such as unprotected heights or moving mechanical parts, and he must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, fumes, odors, dust, gases, and poor ventilation.

(AR 18 ¶ 5.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence.  (AR 18-21.)  The ALJ determined that, while Demolin's impairments could reasonably be expected to cause some of the alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of his conditions was "not entirely consistent with the medical evidence and other evidence in the

---

past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four.  *Id.* at 751 & n.2.  The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience.  *Id.*  A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

record." (AR 18.) The ALJ concluded, in particular, that the objective medical evidence, though indicative of "a severe ongoing spinal impairment, with resultant asthma and restrictive lung defect," did not support a finding that Plaintiff's "resultant limitations rise to the level alleged." (AR 20.) Specifically, the ALJ determined, from his review of the objective medical evidence, that Plaintiff's "2013 spinal surgery alleviated his respiratory symptoms, to some extent, as pulmonary function testing prior to the surgery indicated a severe defect, while he subsequently indicated no complaints, and pulmonary findings were mild." (*Id.*) The ALJ likewise found that, although Demolin "exhibited some antalgic gait during the relevant period," he "was generally capable [of] performing toe and heel walking, as well as postural maneuvers such as mounting and dismounting the examination table during his consultative examination, while strength was either full or mildly reduced during examinations." (*Id.*) The ALJ also noted that Plaintiff "continued to play soccer," and "recently reported jogging and walking several times per week, as well as doing strength training." (AR 19-20.) The ALJ concluded, based on the foregoing, that "even giving credence to the claimant's allegations," the record was devoid of a sufficient basis from which to conclude that Plaintiff was "limited to less than sedentary exertion, with additional postural limitations to account for his scoliosis and environmental limitations to account for his lung restriction and the reported side effects of his medications." (AR 20.) In addition, the ALJ discussed the medical opinions, giving "great weight" to the opinion from examining physician, Samuel Rubinson, M.D., because it was "consistent with" Plaintiff's "performance during his consultative examination," as well as with "his activity level during the relevant period, and recent pulmonary function tests." (AR 20; *see* AR 383-402.) However, the ALJ assigned only "partial weight" to the opinion from non-examining state

agency physician,  Michael Canham, M.D., because it did not "fully account for the claimant's antalgic gait throughout the relevant period, nor his subjective allegations of constant pain."  (AR 20-21; *see* AR 58-60.)

At step four, the ALJ determined that Demolin did not have any past relevant work.  (AR 21 ¶ 6.)  However, at the final step of his analysis, the ALJ determined, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy" that Demolin could perform, based on his age, education, work experience, and residual functional capacity.  (AR 21 ¶ 10.)  The ALJ determined that Demolin would be able to perform such jobs as callout operator, food order clerk, and surveillance system monitor.  (AR 21-22 ¶ 10.)  For that reason, the ALJ concluded that Demolin was not under a "disability," as defined by the Act, and denied his application for benefits.  (AR 22 ¶ 11.)  That denial prompted Demolin's request for judicial review.  (Doc. No. 1; AR 1-6.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards.  *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").  Any conflict in the evidence is to be resolved by the ALJ, and not the court.  *See*

*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Demolin challenges the ALJ's decision on two main grounds. Plaintiff argues, first, that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly concluded that Plaintiff had "improved medically" after his 2013 surgery. (Op. Brief 28-30.) On this issue, Demolin makes four points: (1) that the ALJ misconstrued the objective medical evidence as showing "mild" pulmonary findings; (2) that the ALJ misconstrued Dr. Rubinson's opinion regarding "very severe" obstructive pulmonary disease; (3) that the ALJ improperly relied on Dr. Rubinson's specific opinion that Plaintiff can withstand "frequent bending;" and (4) that the ALJ incorrectly found that Plaintiff was physically able to play soccer as recently as mid-2016. (*Id.*) Next, Demolin argues that the ALJ erred at the final step of his analysis, when he found that there were "significant numbers of jobs in the national economy" that Demolin could perform. (*Id.* at 30-32.) Plaintiff contends that the number of jobs identified by the ALJ was not "significant," particularly given that one of the jobs identified by the ALJ, surveillance system monitor, "no longer requires the same physical capacities" as it once did. (*Id.* at 31.) In addition, Demolin complains that the ALJ did not engage in an analysis of the factors set forth in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). (*Id.* at 30-32.) The

Commissioner insists, however, that the ALJ properly considered the entire evidentiary record, and followed the applicable law, in determining that Demolin is not disabled.  (Resp. 1-16.)

## I.  RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, because it is predicated upon the ALJ's erroneous assumption that his back and lung impairments "improved medically" following a 2013 surgical procedure.  (Op. Brief 28-30.) Demolin contends that the ALJ misconstrued and mischaracterized certain evidence in the record to make that finding, and that he gave other evidence more weight than was warranted.  (*Id.*; Reply 7-13.)  Plaintiff is adamant that the record shows that he, in fact, suffers from severe, disabling conditions.  (*Id.*)  However, the court finds Plaintiff's argument to be unavailing.

In his written decision, the ALJ exhaustively reviewed the evidence of record, including the post-2013 clinical findings, and the two medical opinions detailing Plaintiff's functional limitations.  (AR 19-21.)  The ALJ also detailed Plaintiff's subjective allegations of pain, as set forth in his hearing testimony.  (AR 18.)  The ALJ accurately recounted Plaintiff's treatment records, which reasonably showed that, after Plaintiff underwent a spinal fusion procedure in August 2013, he did not report, or exhibit, any significant problems related to lung function. (AR 19-20; *see, e.g.,* AR 239-40, 344, 350-51, 353, 426.)  In addition, the ALJ discussed Demolin's post-2013 pulmonary function test results.  (AR 19-20.)  The ALJ correctly noted that: (1) an October 2014 test revealed "ongoing lung restriction, with partially reversible airflow obstruction;" (2) a May 2017 test revealed "very severe obstructive pulmonary disease," albeit with "poor test reproducibility;" and (3) a June 2017 test revealed a "mixed obstructive restrictive pattern" with only "mild" obstructive defect.  (*Id.*; *see* AR 243, 384, 407.)  The ALJ

then gave specific, legitimate reasons for his assessments of Plaintiff's credibility, which were linked to the evidence of record.  *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the determination is supported by substantial evidence.).  In making his credibility determination, the ALJ expressly considered Plaintiff's activities of daily living, which he found to be inconsistent with the level of limitation alleged.  (AR 19-20.)  In particular, the ALJ cited treatment records indicating that, after undergoing back surgery in 2013, Plaintiff regularly engaged in various forms of moderate to strenuous exercise, including soccer, jogging, walking, and strength training.  (*Id.*; *see* AR 344, 439.)  The ALJ also noted that post-2013 examinations revealed that Plaintiff's lungs were clear of auscultation, despite his "admitted daily marijuana use."  (AR 19; *see* AR 353, 440.)  The ALJ likewise cited specific, relevant evidence to support his conclusions regarding the amount of weight to assign to each medical source opinion.  (AR 20-21.)

Demolin, for his part, challenges the ALJ's finding that he was still playing soccer in mid-2016.  (Op. Brief 13, 29-30.)  Plaintiff is adamant that "the record reflects" that he stopped playing soccer in 2013.  (*Id.* at 30.)  The court agrees that there is relevant evidence in the record suggesting that Plaintiff did, in fact, stop playing soccer after the 2013 surgery.  (*See, e.g.,* AR 40, 361.)  However, the record is replete with other relevant evidence to the contrary.  Indeed, numerous post-2013 treatment records reference Plaintiff's participation in soccer.  (*See, e.g.,* AR 241, 339, 344.)  The court finds that "a reasonable mind might accept [this evidence] as adequate to support" the ALJ's decision.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."). Faced with such evidence, the ALJ appropriately made a "choice between two conflicting views." *Id.* ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (alterations and internal quotation marks omitted); *see also Tammi F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020) ("[T]he mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination."). Whether the court agrees with the ALJ's interpretation of the evidence is irrelevant. *See Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 625-26 (10th Cir. 2020) ("While we may have reached a different conclusion had we been the factfinder, that is not our function, and we may not reweigh the evidence.").

Plaintiff also argues that the ALJ improperly concluded that his post-2013 pulmonary findings were "mild." (Op. Brief 28-29; *see* AR 20.) Plaintiff contends that the "mild" findings referenced by the ALJ related to his *obstructive* lung condition, as opposed to his *restrictive* lung condition. (Op. Brief 28-29.) Demolin is adamant that, although he does suffer from obstruction issues, his "primary problem is, [and] always has been, restrictive lung disease caused by the kyphoscoliosis." (*Id.* at 29.) Importantly, however, Plaintiff does not point to any evidence overlooked or ignored by the ALJ, which shows that his post-2013 restrictive lung impairment was, in fact, as severe as he alleged. Further, as the ALJ reasonably concluded from his review of the record, after 2013, Demolin did not make "pulmonary complaints," of *any* type, to his physicians. (AR 20.) The ALJ was, therefore, free to conclude, based on the absence of any compelling evidence to the contrary, that Plaintiff's limitations from restrictive lung disease were mild. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from

the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

Finally, Plaintiff contends that the ALJ's RFC determination—finding him capable of sedentary work—is fatally flawed, because it "leaves out a key postural limitation." (Reply 3; *see* Op. Brief 29.) Plaintiff contends, specifically, that the ALJ failed to account for his "inability to bend due to a spinal fusion from the base of his neck to his L4 in his low back." (Reply 3.) However, neither of the two medical opinions in the record indicate that Plaintiff is completely unable to bend. (*See* AR 59, 402.) Further, although both medical opinions do impose postural limitations related to bending, such limitations do not significantly impact the ability to perform sedentary work. *See* Social Security Regulation ["SSR"] 96-9p, 1996 WL 374185 ("Postural limitations or restrictions related to such activities as . . . kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."); *see also Plunk v. Astrue*, No. 07-cv-02192-REB, 2009 WL 2063207, at *3 & n.3 (D. Colo. July 10, 2009) (finding occasional postural restrictions to be "consistent with a functional capacity for sedentary work as found by the ALJ). As such, the ALJ was not required to include a specific bending limitation in his RFC assessment.

In this case, Plaintiff cites no compelling evidence that suggests that the ALJ's conclusions relating to his RFC assessment were deficient. Nor does he point to any specific evidence that the ALJ did not consider, or that was improperly evaluated. Rather, Plaintiff is essentially asking the court to reweigh the evidence evaluated by the ALJ, so as to give more credence to certain evidence, and less credence to other evidence, which would not be

appropriate.  *See Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) ("We may neither reweigh the evidence nor substitute our judgment for that of the agency.")

On this record, then, the ALJ properly exercised his responsibility as fact finder to analyze the evidence, and his determination of Plaintiff's RFC is well-grounded in that analysis. Accordingly, the decision of the Commissioner on this issue must be affirmed.  *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (The Commissioner's final decision "must be affirmed if it is supported by substantial evidence and correct legal standards were used.").

## II.  *Step Five*

Plaintiff also argues that the ALJ erred at step five of his analysis, by concluding that there were significant number of jobs in the national economy that Plaintiff was capable of performing.  (Op. Brief 30-32.)  On this issue, Plaintiff appears to make two arguments: (1) that the number of jobs identified by the ALJ was not a sufficiently "significant" amount; and (2) that the ALJ made his step five determination without first considering the factors set forth in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).  (*Id.*)

Because Demolin met his burden to show that he did not have any past work, the Commissioner had the burden "at step five to show that [Demolin] retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Lax*, 489 F.3d at 1084.  Such work must "exist[] in significant numbers either in the region where [he] lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).  It is irrelevant to this inquiry whether: "(1) [w]ork exists in the immediate area in which [the claimant] live[s]; (2) [a] specific job vacancy exists for [the claimant]; or (3) [the claimant] would be hired if [he or she] applied for work."  20 C.F.R. § 404.1566(a).

The Tenth Circuit has repeatedly declined to "draw[] a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009) (quoting *Trimiar*, 966 F.2d at 1330). Rather, "each case should be evaluated on its individual merits." *Trimiar*, 966 F.2d at 1330. Relevant factors include "the level of [the] claimant's disability; the reliability of the vocational expert's testimony; the distance [the] claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Id.* (citation omitted).

Here, Demolin contends that the ALJ failed to consider two *Trimiar* factors: (1) "the fact that [Demolin] does not drive any vehicle and never has;" and (2) "the nature and extent of [his] disability." (Op. Brief 31-32.) Plaintiff argues that the first factor "could limit jobs to metropolitan areas and could erode the job numbers somewhat." (*Id.* at 32.) As to the second factor, Plaintiff argues that his "dyslexia has not been mentioned as effecting numbers, which might be relevant to potential employers of a Food Order Clerk," and that his "combination of asthma and restrictive lung disease" could potentially "be affected by the environment where a Food Order Clerk works, which apparently is often in a restaurant." (*Id.*) In addition, Plaintiff asks the court to take "judicial notice" of "a recent study of the job of Surveillance System Monitor," which purportedly suggests that that position "no longer requires the same physical capacities, levels of general educational development, temperament or ability to negotiate the same environmental conditions," as set forth in the Dictionary of Occupational Titles ["DOT"]. (*Id.* at 31.)

First, to the extent that Plaintiff believes the record is inadequate regarding the occupations identified by the vocational expert, including the location and geographical

concentration of those positions or their requirements, his attorney could have asked additional questions at the hearing to clarify such issues.  *See Gay v. Sullivan*, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993) ("Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed."); *see generally Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (observing that, under normal circumstances, the ALJ may reasonably rely on "counsel to identify the issue or issues requiring further development").  And, to the extent that Plaintiff challenges the vocational expert's reliance on the DOT's job descriptions, the agency's governing regulations and rulings make clear that such reliance is reasonable.  *See* 20 C.F.R. § 404.1566(d) (identifying the DOT to be "reliable job information" for purposes of evaluating disability claims); SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy."); *see also Sigler v. Comm'r, Soc. Sec. Admin.*, No. 19-cv-02398-DDD, 2020 WL 3097380, at *6 (D. Colo. June 11, 2020) ("It is certainly possible that this study contains accurate information, but the ALJ was under no obligation to take administrative notice of it, whereas the ALJ did rely on the DOT and testimony of a vocational expert, both of which are considered reliable sources by governing regulations.").

Further, as Plaintiff himself appears to acknowledge, in *Trimiar*, "the focus was on jobs in the regional economy because the vocational expert in that case testified *only* to the number of jobs available in the *regional* economy."  *Raymond*, 621 F.3d at 1274 n.2.  The Tenth Circuit, therefore, "turned to the multi-factor analysis to help" in determining whether a mere "650 to 900 [regional] jobs [was] a 'significant number.'"  *Id.* (citing *Trimiar*, 966 F.2d at 1330).  In this

case, by contrast, the ALJ made a finding, only as to national jobs, which is consistent with the Tenth Circuit's observation that "the proper focus generally must be on jobs in the national, not regional, economy." *Id.* at 1274.  Moreover, the number of national jobs identified by the ALJ in this case—approximately 37,100—far exceed the 650 to 900 regional jobs identified in *Trimiar*. *See Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649-50 (10th Cir. 2020) (holding that "20,500 to 22,000 jobs" is not an insufficient number of jobs, *per se*, under the governing regulations)

As a final matter, it must be stressed that,"[o]verriding the bare numbers is the procedural fact that th[is] case[] involve[s] court review of a *finding* of numerical significance *made by the ALJ*." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (emphasis in original).  The Tenth Circuit has made clear that "judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks and citation omitted).  In this case, the ALJ found that Demolin could perform jobs that existed in significant numbers in the national economy, and the court "do[es] not presume to interpose [its] judgment for that of the ALJ." *Trimiar*, 966 F.2d at 1332.  For that reason, the court finds Plaintiff's second point of contention to be without merit.

Accordingly, it is

**ORDERED** that the Commissioner's final decision is **AFFIRMED**.

Dated this 22nd day of March, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge